UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| PATRICIA THIEFFRY, Derivatively and on Behalf of SYNCHRONOSS TECHNOLOGIES, INC., | : : : : | **OPINION** |
| Plaintiff, | : : | Civil Action No.: 17-7173(FLW) |
| v. | : : | |
| STEPHEN G. WALDIS, WILLIAM J. CADOGAN, THOMAS J. HOPKINS, JAMES M. MCCORMICK, DONNIE M. MOORE, KAREN L. ROSENBERGER, RONALD W. HOVSEPIAN, and JOHN FREDERICK, | : : : : : : : | |
| Defendants, | : : | |
| -and- | : : | |
| SYNCHRONOSS TECHNOLOGIES, INC., | : : | |
| Nominal Defendant. | : : | |

---

| | | |
|---|---|---|
| KIRK LAUGHLIN, Derivatively and on Behalf of SYNCHRONOSS TECHNOLOGIES, INC., | : : : : | |
| Plaintiff, | : : | Civil Action No.:17-9039(FLW) |
| v. | : : | |
| STEPHEN G. WALDIS, WILLIAM J. CADOGAN, THOMAS J. HOPKINS, JAMES M. MCCORMICK, DONNIE M. MOORE, ROBERT E. GARCIA, LAWRENCE IRVING, KAREN L. ROSENBERGER, RONALD W. HOVSEPIAN, and JOHN FREDERICK, | : : : : : : : : | |
| -and- | : | |

SYNCHRONOSS TECHNOLOGIES, INC.,          :
                                         :
        Nominal Defendant.               :
_____:
                                         :
LISA LEBOEUF, Individually and           :
on Behalf of SYNCHRONOSS                 :
TECHNOLOGIES, INC.,                      :
                                         :   Civil Action No.: 17-9766(FLW)
        Plaintiff,                       :
                                         :
    v.                                   :
                                         :
STEPHEN G. WALDIS, WILLIAM J.            :
CADOGAN, THOMAS J. HOPKINS,              :
JAMES M. MCCORMICK, and DONNIE           :
M. MOORE,                                :
                                         :
    -and-                                :
                                         :
SYNCHRONOSS TECHNOLOGIES, INC.,          :
                                         :
        Nominal Defendant.               :
_____:
                                         :
LARRY A. COLTRANE, Derivatively and      :
on Behalf of SYNCHRONOSS                 :
TECHNOLOGIES, INC.,                      :
                                         :
                                         :
        Plaintiff,                       :   Civil Action No.:17-10062(FLW)
                                         :
    v.                                   :
                                         :
STEPHEN G. WALDIS, WILLIAM J.            :
CADOGAN, THOMAS J. HOPKINS,              :
JAMES M. MCCORMICK, DONNIE M.            :
MOORE, KAREN L. ROSENBERGER,             :
RONALD W. HOVSEPIAN, and JOHN            :
FREDERICK,                               :
                                         :
    -and-                                :
                                         :
SYNCHRONOSS TECHNOLOGIES, INC.,          :
                                         :
        Nominal Defendant.               :
_____:

**WOLFSON, United States District Judge:**

These four separate shareholder derivative lawsuits—*Thieffry v. Waldis, et al.*, Civ. No. 07173, *Laughlin v. Waldis, et al.*, Civ. No. 09039, *LeBoeuf v. Waldis, et al.*, Civ. No. 09766,[1] and *Coltrane v. Waldis, et al.*, Civ. No. 10062—arise out of claims accusing certain former and current officers and directors of Nominal Defendant Synchronoss Technologies, Inc. ("Synchronoss") of breaching their fiduciary duties by selling a profitable portion of the business to a company controlled by friends and family of Synchronoss insiders. Before the Court are motions filed by each of the four plaintiffs seeking to consolidate the related cases. In addition, Plaintiffs Patricia Thieffry and Kirk Laughlin move to be named Co-Lead Plaintiffs and request that the Court appoint their attorneys, The Rosen Law Firm. P.A. and Johnson Fistel, LLP, as Co-Lead Counsel. Plaintiff Larry A. Coltrane seeks to appoint his attorneys, Harwood Feffer LLP and Schnader Harrison Segal & Lewis LLP, as Co-Lead Counsel. Finally, Plaintiff Lisa LeBoeuf moves to appoint Block & Levitan, LLP as Lead Counsel and Gardy & Notis LLP as Liaison Counsel.

For the reasons set forth herein, the motions to consolidate are granted. LeBoeuf is appointed as Lead Plaintiff, the law firm of Block & Leviton, LLP is appointed as Lead Counsel, and the law firm of Gardy & Notis LLP is appointed as Liaison Counsel.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts relevant to the present motions, as alleged by Plaintiffs in their Complaints, are as follows. Synchronoss is a Delaware-based provider of mobile services. Thieffry Compl. at ¶ 2. It operates an "Activation" business that provides mobile handset activation and network

---

[1] This matter was originally assigned to the Hon. Peter G. Sheridan, U.S.D.J. It was transferred to me in November 2017. *See* DKT # 11.

services to mobile phone carriers around the world. LeBoeuf Compl. at ¶ 4. Each of the Complaints name as defendants Synchnronoss Executive Chairman and CEO Stephen G. Waldis, as well as directors William J. Cadogan, Thomas J. Hopkins, James M. McCormack, and Donnie M. Moore, and Synchronoss as a nominal defendant. Coltrane Compl. at ¶¶ 15–20; Laughlin Compl. at ¶¶ 24–29; LeBoeuf Compl. at ¶¶ 19–24; Thieffry Compl. at ¶¶ 29–51. In addition, the Thieffry, Laughlin, and Coltrane Complaints name as defendants former Synchronoss Executive Vice President and Chief Financial Officer Karen L. Rosenberger, former CEO and director Ronald W. Hovsepian, and former Chief Financial Officer John Frederick. Coltrane Compl. at ¶¶ 21–23; Laughlin Compl. at ¶¶ 32–34; Thieffry Compl. at ¶¶ 52–59. The *Laughlin* Complaint additionally names as defendants Synchronoss Chief Financial Officer Lawrence Irving and President and Chief Operating Officer Robert E. Garcia. Laughlin Compl. at ¶¶ 30–31.[2]

Plaintiffs' allegations stem from the December 2016 sale of 70% of Synchronoss' Activation business to a company called Sequential Technology International, LLC ("Sequential"). Plaintiffs contend that Defendants failed to disclose that Sequential "was merely an alias for an entity called Omniglobe USA," a company with "extensive ties" to Synchronoss, namely that 50% of its ownership is comprised of "friends and family of Synchronoss."  Coltrane Compl. at ¶ 5. Following the sale, when Synchronoss filed its annual form 10-K with the Securities and Exchange Commission ("SEC") on February 27, 2017, it disclosed that it had recognized $9.2 million in previously undisclosed licensing revenue from an agreement that licensed Synchronoss' analytics software to Sequential. Thieffry Compl. at ¶ 6. According to Plaintiffs, Synchronoss would not have achieved its revenue goals but for this licensing agreement. *Id.* In April of 2017, however, Synchronoss announced that it would in fact fall $13-

---

[2] The Court will refer to all of the named defendants as "Defendants" in this Opinion.

14 million short of its revenue goals, causing the company's stock price to drop nearly 50%. *Id.* at ¶¶ 8–9. Synchronoss ultimately announced that it would need to restate revenue for the three-year period ended December 31, 2016. LeBoeuf Compl. at ¶ 4.

The four derivative actions were filed in this Court on behalf of the corporation, alleging various claims related to Defendants' alleged breaches of their fiduciary duties. Plaintiff Thieffry first filed a Complaint on September 15, 2017, and Plaintiff Laughlin commenced his action on October 24, 2017. Plaintiffs LeBoeuf and Coltrane soon followed, filing Complaints on October 27, 2017 and October 30, 2017 respectively. There is also a related securities class action pending before this Court, *In Re Synchronoss Technologies, Inc. Securities Litigation*, Civ. No. 3:17-cv-02978.

Prior to filing her Complaint, Plaintiff LeBoeuf issued a pre-suit books-and-record demand pursuant to Section 220 of the General Corporation Laws of the State of Delaware ("Section 220"), receiving a 625-page production from Synchronoss on which she based a portion of her Complaint. *See, e.g.*, LeBoeuf Compl. at ¶¶ 70–89. On November 27, 2017, this Court granted Plaintiff Thieffry's Motion to Stay the *Thieffry* action in exchange for Synchronoss' agreement to "1) include Plaintiff Thieffry in any mediation with securities plaintiffs or plaintiffs in related derivative actions; and 2) to provide Plaintiff Thieffry with copies of documents produced to plaintiffs in [the securities class action], to any plaintiffs in any related derivative lawsuits, or to any purported Synchronoss shareholder in response to a related books and records request." ECF No. 20 at 7–8.

Soon after the Complaints were filed, each Plaintiff filed a motion to consolidate and an application to appoint lead plaintiff and counsel.

5

## II. MOTIONS TO CONSOLIDATE

Rule 42(a) of the Federal Rules of Civil Procedure allows consolidation of two or more actions that involve common questions of law and fact. *See also Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 103 n. 3 (3d Cir. 1988) (consolidation is appropriate where there are actions involving common questions of law or fact); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 454 (D.N.J. 2000) (same) (citations omitted); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80 (D.N.J. 1993) ("Rule 42(a) gives the [D]istrict [C]ourt 'broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice.'").

Here, all of the plaintiffs agree, and Defendants have not opposed, that the four individual cases should be consolidated. Indeed, there is no dispute that these cases involve common (although not identical) questions of law and fact. Each action was filed by a Synchronoss shareholder on behalf of the company, and they each share most of the same defendants. They all present overlapping facts and claims related to the sale of Synchronoss' Activation business to Sequential, and the resulting drop in stock price and financial restatements. Accordingly, all four civil actions will be consolidated for trial purposes.

## III. MOTIONS TO APPOINT LEAD COUNSEL

Next, each of the plaintiffs moves to appoint lead counsel. While the Third Circuit has not required the appointment of lead counsel in shareholder derivative litigation, courts have generally agreed that doing so enables the efficient management of the action. *See MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) (An order consolidating such actions during the pre-trial stages, together with the appointment of a general counsel may in many instances prove the only effective means of channeling the efforts of counsel.); *KBC Asset Mgmt. NV on behalf of*

*Chemed Corp. v. McNamara*, 78 F. Supp. 3d 599, 608 (D. Del. 2015) (appointing lead and liaison counsel in consolidated derivative action); *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849, 2006 WL 3761986, at *2 (E.D.N.Y. Sept. 22, 2006) (appointing lead counsel in consolidated derivative action). I find appointing Lead Counsel in this case appropriate.

Although there is neither statutory nor controlling case law to guide the Court in selecting lead counsel, Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1") requires that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23. 1. Courts differ in their approach in implementing this rule, but their inquiry nonetheless focuses on the competence of counsel, and significantly, the quality of counsel's legal representation in the litigation. Three factors are particularly relevant to this determination: 1) the quality of the pleadings, 2) the vigorousness of the prosecution of the lawsuits, and 3) the capabilities of counsel. *See In re Comverse*, 2006 WL 3761986, at *2. Appointing lead counsel is in the sound discretion of the court. *Resnik v. Woertz*, 774 F. Supp. 2d 614, 625 (D. Del. 2011); *see Berg v. Guthart*, No. 14-00515, 2014 U.S. Dist. LEXIS 105357, at *8 (N.D. Cal. July 30, 2014); *see also Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1989); *Berkowitz ex rel. Affymetrix, Inc. v. Fodor*, No. 06-05353, 2006 U.S. Dist. LEXIS 96065 (N.D. Cal. Nov. 20, 2006); *Millman ex rel. Friedman's, Inc. v. Brinkley*, No. 03-3831, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004)); *Brown v. Kelly*, No. 06-04671, 2006 U.S. Dist. LEXIS 89162 (N.D. Cal. Nov. 27, 2006).

Before turning to these factors, the Court will briefly address Plaintiffs Thieffry and Laughlin's contention that Plaintiff Coltrane lacks standing, thus disqualifying his counsel from being appointed. Pursuant to Rule 23.1, a plaintiff in a derivative suit (1) must be a stockholder

at the time of the suit, and (2) must have been a stockholder at the time of the wrong of which he complains. *In re Pittsburgh & L. E. R. Co Sec. & Antitrust Litig.*, 1065 (3d Cir. 1976). Although the Court need not determine Coltrane's Article III standing on a motion to appoint lead counsel, Thieffry nevertheless argues that Coltrane lacks standing because he failed to specify in his Complaint the period of his Synchronoss stock ownership. In response to the argument, Coltrane submitted a certification, under penalty of perjury, attesting to the fact that he purchased the Synchronoss stock on April 4, 2016, and that he would amend the Complaint to reflect that date. ECF No. 10 at ¶¶ 3–4. Based on this filing, I will consider Coltrane's lead counsel application, since he held Synchronoss stock during the relevant period, i.e., in late 2016 and early 2017. *See, e.g., Conrad v. Blank*, 940 A.2d 28, 41 (Del. Ch. 2007) (noting that even though "Delaware courts strictly interpret the contemporaneous ownership rule" they "acknowledge that that some transactions that are attacked in complaints continue over a period of time and that persons who buy shares during that time have standing to sue").

Next, the Court turns to each of the factors.[3]

**1. Quality of the Pleadings**

The quality of the pleadings can be helpful in forecasting which firm would best represent the interests of the shareholders and the rights of the corporation. The focus here is on counsel's efforts in drafting an adequate complaint that would advance shareholders' interests, not whether one's claims are superior to another's. *See In re Comverse*, 2006 WL 3761986, at

---

[3] In addition to these factors, Coltrane argues that his proposed liaison counsel, Schander Harrison Segal & Lewis, should be selected, because that firm has extensive knowledge of practicing in the District of New Jersey. While I acknowledge that such expertise is helpful in litigating in this district, neither the factors nor decisions in this area have placed any relevance on this particular expertise. As such, I do not find this fact probative in the selection of lead counsel.

*4. The "more comprehensive" the allegations, the better they can advance shareholder interests. *Id.*

Each of the complaints filed in this action is lengthy and extensive, providing evidence that any counsel the Court chooses would represent shareholders' interests in the consolidated derivative suit. However, one key factor sets apart the *LeBoeuf* Complaint: it contains allegations drawn from its Section 220 demand on Synchronoss, and thus include non-public information. For instance, although each of the complaints allege that Selection—the company to which Synchronoss sold its Activation business—was controlled by friends and family of Synchronoss insiders, the *LeBoeuf* Complaint, alone, actually identifies these purported friends and family members and explains their connections to Defendants. The other complaints, in contrast, rely solely on publicly available information, such as an article from the Southern Investigative Reporting Foundation disclosing that Activation had been sold to a company comprised of "friends of family." While such an allegation is not evidence of inadequate lawyering at this stage of the litigation, the lack of effort to obtain available relevant information regarding their claims suggests, at the least, that the other firms had not pursued this case with the same zeal as Block & Levitan.

Plaintiffs also criticize each other for using words and phrases that may subject the pleadings to heightened scrutiny. LeBoeuf takes aim at the other complaints for including allegations that will purportedly be subject to the defendant-friendly business judgment rule as opposed to plaintiff-friendly "entire fairness" review. Coltrane similarly contends that Thieffry and Laughlin unnecessarily assert claims under the Securities and Exchange Act that would heighten Plaintiffs' burden. At this stage, however, the Court need not evaluate the types of claims that these plaintiffs have brought, because it only demonstrates how each counsel views

the trajectory of his/her case. *See In re Comverse Tech.*, 2006 WL 3761986, at *4 (noting that "[a]t best the purported deficiencies show that each counsel views the case differently or has made tactical decisions on the best course for litigation"). Thus, the Court finds these criticisms not particularly relevant in the determination of lead counsel; ultimately, any purported deficiencies can be cured with the filing of a consolidated derivative complaint.

In sum, this factor weighs in favor of Plaintiff LeBoeuf given her detailed allegations based on the books-and-records demand.

### 2. Vigorousness of the Prosecution

Each Plaintiff stresses that he or she has expended significant effort in filing suit, and there is not doubt that any of the proposed counsel will prosecute the case with a certain degree of vigor. With that said, LeBoeuf contends that her counsel has demonstrated exceptional vigor because it was the only firm that issued a books-and-records demand and then obtained a 625-page production that underlies a substantial portion of her Complaint. Thieffry responds that this distinction is "academic" because Defendants "specifically confirmed that they would provide Rosen Law with the documents produced in response to the 220 demand" and thus, she would be filing a consolidated amended complaint containing allegations based on the same documents. ECF No. 12 at 8. Coltrane entered into no such agreement but claims that he "considered and ultimately rejected seeking a Chapter 220 production" because forcing Synchronoss "to incur the additional expense and legal fees necessary to response [sic] to such a request" was unnecessary "because of the existing wealth of public information." ECF No. 14 at 4.

The Court finds that the decision of LeBoeuf's counsel to obtain documents through a books-and-records demand elevates its efforts above the other firms. Although such a demand is not strictly necessary in the context of a derivative suit, LeBoeuf is correct that doing so is

preferred. *See, e.g.*, *In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545, 580 (D.N.J. 2011) (noting that numerous courts have explained that it is in the best interest of all parties and the court for plaintiffs to seek copies of corporate records prior to filing a demand-futility shareholder derivative action). That only LeBoeuf's counsel had the foresight to seek these records suggests that it will continue to zealously protect the interests of shareholders.

LeBoeuf also claims that Thieffry's agreement to stay her case in exchange for the opportunity to mediate and to receive documents produced in related actions demonstrates counsel's lack of vigor. The Court appreciates that litigation strategy rather than indolence likely influenced this decision, and, as such, will not penalize counsel for its strategic maneuvers. Still, as already discussed, because LeBoeuf alone sought and obtained records by pre-suit demand, Thieffry's agreement to only receive documents obtained through the efforts of others undermines the litigation efforts of Thieffry's counsel in this context.

Finally, Thieffry and Laughlin for their part contend that their expeditiousness in filing suit before LeBoeuf or Coltrane should weigh in their favor. The New York state court decision upon which Thieffry relies for this proposition, however, evaluated "priority in instituting suit" only *after* determining that each counsel would prosecute the case with equal vigor. *Sollins v. Alexander*, No. 601272/2006, 2006 N.Y. Misc. LEXIS 2289, at *11 (Sup. Ct. July 13, 2006). Here, because other factors favor LeBoeuf, the Court does not find that the fact that Thieffry and Laughlin raced to the courthouse tips this factor in their favor.

### 3. Capabilities of Counsel

The Court has reviewed the qualifications of all of the proposed counsel and is impressed with the experience and capabilities of each. Each counsel might have slightly different strengths, but "it is difficult to say which strengths will be most important in this case." *KBC*

*Asset Mgmt.,* 78 F. Supp. 3d at 608. Further, "[n]o firm…has suggested a definitive template with which to measure experience and effectiveness, and moreover it is difficult to contemplate one." *In re Comverse,* 2006 WL 3761986, at *3.

While I recognize that each counsel is well qualified, I am particularly persuaded by Block & Levitan's experience in large securities class actions, such as its representations of plaintiffs in *In re BP Securities Litigation*, Civ. No. 4:10-MD-02185 (S.D. Tex.), *In re Google, Inc. Class C Shareholder Litigation*, Civ. No. 7469-CS (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation*, Civ. No. 3:15-md-02672 (N.D. Cal.). I find that the experience garnered from such representations will benefit the shareholders in this suit. In that connection, I further find that Gardy & Notis, LeBoeuf's proposed Liaison Counsel, is also qualified to assume its role.

In sum, the Court finds that this factor slightly favors counsel for LeBoeuf. And, having weighed all relevant factors, the Court selects Block & Levitan as Lead Counsel and Gardy & Notis as Liaison Counsel.

**IV.     MOTION TO APPOINT LEAD PLAINTIFF**

In addition to requesting that their attorneys be appointed Co-Lead Counsel, Plaintiffs Thieffry and Laughlin seek to be appointed as Co-Lead Plaintiffs. On the other hand, LeBoeuf and Coltrane point out that the Court need not appoint lead plaintiff at this time because this is a derivative suit rather than a class action under the Private Securities Litigation Reform Act. However, both LeBoeuf and Coltrane seek lead plaintiff status should the Court exercise its discretion to appoint a lead. At the outset, I note that although these are derivative actions, I find that appointing a lead plaintiff helpful "in order to create an efficient case-management structure." *In re Chemed Corp., S'holder Derivative Litig.*, No. 13-1854, 2017 U.S. Dist. LEXIS

12

67533, at *32 (D. Del. Apr. 25, 2017); *N Miami Beach Gen. Employees Retirement Fund v. Parkinson*, No. 10-6514, 2011 U.S. Dist. LEXIS 71736, at *3 (N.D. Ill. July 5, 2011).

Here, each plaintiff was an individual investor, and as such, they all stand on equal footing. In that regard, I reject Thieffry and Laughlin's argument that their larger economic stake in the company should afford them Co-Lead Plaintiff status. See 7C Wright & Miller Fed. Prac. & Proc. Civ. § 1833, 1841 (1986) (noting that considerations focused on the shareholder's personal stake in the company "do[ ] not apply in a derivative suit…. Because the derivative suit is brought to enforce the corporation's right and the stockholders will benefit only indirectly… the dollar amount or numbers of representatives involved should not be relevant."). Rather, having considered the record, I find LeBoeuf is the most adequate lead plaintiff for many of the same reasons why her counsel is selected as lead — namely, the vigorousness with which she has prosecuted the case thus far, as evidenced by the Section 220 demand. As such, LeBoeuf is appointed as lead plaintiff.

## V.  CONCLUSION

For the foregoing reasons, the Court will consolidate the four actions into a single derivative action and will appoint LeBoeuf as Lead Plaintiff, Block & Leviton as Lead Counsel, and Gardy & Notis as Liaison Counsel.

Dated: May 24, 2018                                  /s/ Freda L. Wolfson
                                                                    Hon. Freda L. Wolfson
                                                                    United States District Judge