**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE SYNCHRONOSS TECHNOLOGIES, INC. SECURITIES LITIGATION<br><br>――――――――――――――――<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Civil Action No.: 17-7173 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

Presently before the Court is a motion for reconsideration brought by Defendants Stephen G. Waldis ("Waldis), William J. Cadogan ("Cadogan"), Thomas J. Hopkins ("Hopkins"), James M. McCormick ("McCormick"), and Donnie M. Moore ("Moore") (collectively, the "Directors" or "Defendants") and Nominal Defendant Synchronoss Technologies, Inc. ("Synchronoss" or the "Company").  Defendants seek reconsideration of this Court's November 29, 2019 Opinion and Order denying Defendants' motion to dismiss plaintiff Lisa LaBoeuf's ("Plaintiff") consolidated Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1.

For the reasons set forth below, Defendants' motion for reconsideration is **GRANTED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the relevant background of this matter is set forth in my November 26, 2019 Opinion, I will only recount the necessary facts for the resolution of this Motion.  *See generally In re Synchronoss Techs., Inc. Sec. Litig.*, No. 17-7173 (D.N.J. Nov. 26, 2019) ("Slip Op." or "Opinion").  On October 27, 2017, Plaintiffs filed this shareholder derivative suit, alleging that in December 2016 when Synchronoss divested its Activation business (the "Activation Divestiture"), a component of the Company which provides mobile handset activation and network services, the

Synchronoss Board of Directors (the "Board") breached its fiduciary duties to the Company and its shareholders by issuing misleading public statements in connection with the sale. In addition to other claims, Plaintiffs asserted that Defendants breached their duty of loyalty to the Company's shareholders by disseminating misleading information regarding the accounting of revenue from a licensing transaction into which the Company entered, contemporaneously with the Activation Divestiture. Defendants moved to dismiss the Complaint on two grounds: for failure to assert a pre-suit demand as required under Section 327 of Delaware General Corporation Law and failure to adequately plead demand futility under Federal Rule of Civil Procedure 23.1.

I denied Defendants' motion to dismiss. I found that Plaintiff had adequately alleged that the Directors face a substantial risk of liability for breach of the fiduciary duty of loyalty due to their failure to disclose material information regarding the sale of the Activation business, including the financial considerations underlying the sale and thus, demand would have been futile.[1] On this motion, Defendants move for reconsideration of the Court's decision. Plaintiff opposes the motion.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1 govern motions for reconsideration. More specifically, pursuant to Local Civil Rule 7.1(i), a litigant moving for reconsideration must "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]"  L. Civ. R. 7.1(i).

---

[1]      In opposing the prior motion, Plaintiff relied on various theories for her breach of fiduciary duty claims many of which were dismissed in my prior opinion including a *Caremark* claim, breach of duty based on potential insider trading liability and corporate waste. I limited Plaintiff's breach of fiduciary duty claims in the following way: the alleged breach fiduciary duty of loyalty premised on Defendants' failure to disclose material information regarding the financial terms of the Activation Divestiture and the omissions regarding the $9.2 million licensing fee revenue and its impact on the company's Fourth Quarter 2016 financial results. *See* Slip Op. at 6.

Moreover, motions for reconsideration are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992). Indeed, requests for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

There are three grounds which require a Court to reconsider its prior decision: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence that was previously unavailable; or (3) to correct a clear error of law or fact or to prevent manifest injustice. *See Blystone*, 664 F.3d at 415. "A court commits clear error of law only if the record cannot support the findings that led to the ruling." *Rich v. State*, 294 F. Supp. 3d 266, 272 (D.N.J. 2018). "Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling." *ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992 at *6 (D.N.J. 2010).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citations omitted). In other words, "a motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted). Rather, a difference of opinion with a court's decision should be dealt with through the appellate process. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998). Ultimately, a court should only

grant such a motion if the matters overlooked might reasonably have resulted in a different conclusion.  *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

### III.  ANALYSIS

In my prior Opinion, I found that Plaintiff had adequately alleged that the Directors faced a substantial risk of liability for breach of the fiduciary duty of loyalty based on certain misstatements and omissions made by the Company during the course of the sale.  Specifically, I concluded that "Plaintiff ha[d] adequately alleged that the Directors face a substantial risk of liability stemming from their omissions and misleading statements regarding the licensing fee, the terms of the Activation Divestiture, and Sequential's ownership." Slip op. at 40.  As explained in the Opinion,

> [o]n February 8, 2018, when Synchronoss announced its financial results for the fourth quarter of 2016, it stated that its revenue forecast for "Cloud Services" came in "right on target" at $121.7 million. Compl. ¶67.  In early December, during a conference call with investors, the Company had forecasted that it anticipated Cloud Services revenue between $122 million and $125 million. *Id*. at ¶¶66-67.  At that time, the Company did not mention the license agreement, or the fact that the $9.2 million from the licensing agreement was factored into the revenue for the Cloud Services.  *Id*.  Ostensibly, absent the licensing revenue, the Company would have fallen far short of its initial revenue projection of $122 million to $125 million.  The alleged circumstances support a reasonable inference that the Directors omitted the information regarding the licensing agreement, in bad faith in order to mislead the shareholders regarding the Company's financial health.

*Id*. (citing Compl. ¶¶66-67).  Additionally, I concluded that Plaintiff had adequately alleged that Defendants faced liability for breach of the duty of disclosure based on Plaintiff's allegations that "the Directors disseminated false information regarding the pricing of the Activation sale, by

alleging that in their December 6, 2016 Form 8-K, the Company falsely claimed that it had sold a

70% interest in STI to Sequential 'in return for a cash payment of $146 million,'" when, in fact,

the Company would receive $17.3 million in cash, and the remainder of Sequential's payment for

the Activation business was in the form of an $83 million note receivable payable.  Slip Op. at 41

(citing Compl. ¶¶41-42).  In that regard, the Opinion noted that "the bulk of these statements and

omissions were in connection with the Company's SEC filings, which were allegedly signed by

the Directors."  *Id*. at 42.  However, as Defendant points out, these SEC filings were signed by

Waldis, and not the other Directors.

Defendants assert that the Court committed manifest error in concluding that the Directors

faced a substantial risk of liability for breach of the duty of disclosure, based on the misleading

statements regarding the financial terms of the Activation Divestiture and the omissions regarding

the impact of the licensing fee revenue on the Company's Fourth Quarter 2016 financial results.

Defendants' arguments largely hinge on the contention that the record does not support the finding

that the Directors signed the SEC filings at issue, and "under Delaware law, a complaint must not

merely allege that the directors signed the misleading disclosure document but that they did so

knowing that it was materially inaccurate."  ECF No. 65-1, Def. Br.at 14-16.[2]  In that regard,

Defendants highlight that the Complaint alleges that the purported misstatements were made in

"(1) an SEC Form 8-K dated December 6, 2016 (¶ 41); (2) an SEC Form 8-K dated December 22,

2016 (¶ 47)3; and (3) an SEC Form 8-K dated February 8, 2017 (¶ 67)," and those particular SEC

---

[2]     Defendants filed a motion for leave to file a reply brief in support of their motion for
reconsideration. *See* ECF No. 70. Having considered Defendants' motion and Plaintiffs'
opposition, the Court grants Defendants motion and considers the arguments raised in Defendants
reply brief.

filings were signed by the Company's CEO.[3]  *Id.* at 8.  Furthermore, Defendants contend that the "Complaint does not, and cannot validly, allege that the Directors made statements during, or were participants in, [the December 6, 2016 and February 8, 2018] investor calls."  *Id.* at 4.  Thus, Defendants assert that the Complaint has not adequately alleged that the Directors bear a substantial risk of liability regarding the alleged disclosure violations, because the majority of the Directors were not involved in issuing the any of the purported misstatements.  *Id.*

In response, Plaintiff acknowledges that not all of the directors signed the SEC Form 8-K filings at issue, but argue, instead, that Defendants "overstate the legal importance of [that] fact." ECF No. 69, Pl. Br. at 1.  First, Plaintiff notes that in their briefing on the initial motion to dismiss, Defendants did not raise the argument that all of the Defendants could not be subject to liability for breach of fiduciary duty based on the misstatements in the SEC filings because only one of the directors, Waldis, signed the filing which contained the alleged misstatements.  *Id.* at 3-4.  Second, Plaintiff contends that "[n]one of the authority cited by Defendants hold that a board member must have signed an allegedly false statement in order to face a substantial likelihood of liability."  *Id.* at 4.  In that regard, Plaintiff distinguishes the cases relied upon by Defendants contending that those cases did not involve "a major, transformative transaction expressly approved by the Board, as this case does."  *Id.* at 9.  Plaintiff contends that '[g]iven the Board's detailed involvement in

---

[3]     The SEC filings are appropriate for consideration on this motion.  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 163 n.3 (3d Cir. 2014) (explaining that on a motion to dismiss a Court may "consider documents incorporated into the complaint and take judicial notice of SEC filings").  The Form 8-Ks dated December 6 and 22, 2016 were signed by defendant Waldis while the February 8, 2017 Form 8-K was signed by non-party Ronald Hovsepian, who replaced Waldis as CEO after his retirement. Although the parties only provided the Court with the December 6, 2016 SEC filing as an exhibit, and did not proffer the others, either on this motion or the prior motion to dismiss, all of the relevant Synchronoss's SEC filings are available on the Company's publicly available investor relations website and were viewed by the Court. *See* Synchronoss, SEC Filings, https://synchronosstechnologiesinc.gcs-web.com/financial-information/sec-filings (last visited June 8, 2020).

this major, transformative transaction, the Court can correctly infer that the Board was responsible for statements made to the public about the transaction, even in the absence of evidence that the Board signed or made the statements made, *i.e.*, given the Board's alleged involvement in the transaction, it is plausible that the Board was at least partly 'directly responsible for the misstatements or omissions' alleged." *Id*. at 10 (quoting *Citigroup*, 964 A.2d at 134).

### A.  Defendants Have Not Waived This Argument

As an initial matter, I must address Plaintiff's argument that Defendants have waived the basis for their motion for reconsideration by failing to raise their argument on their motion to dismiss. I disagree. While Plaintiff is correct that motions for reconsideration "are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers," *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F.Supp.2d 610, 613 (D.N.J. 2001), here, Defendants appear to have raised the issue previously.  In their reply brief, Defendants argued the Complaint fails to allege that "the Board was involved in making the disclosures." ECF No. 54, Def MTD Reply Br. at 18. While the issue was raised only briefly, and Defendants did not emphasize, as they do on this motion, that the directors, other than Waldis, did not sign the SEC filings at issue, Defendants clearly presented the argument. Accordingly, I find that Defendants did not waive this argument.

### B.  The Record Does Not Support a Finding that the Directors were Involved in Making the Misleading Disclosures

In my prior Opinion, I concluded that Defendants faced a substantial risk of liability for breach of fiduciary duty because the Company failed to disclose that its fourth quarter 2016 financial results included $9.2 million from the then-undisclosed licensing agreement, and that it had reclassified revenue historically derived from Cloud Analytics offering to the Cloud category. However, Defendants correctly assert that the prior Opinion mistakenly indicates that the  SEC

filings containing the alleged disclosure violations were signed "by the Directors," rather than Waldis and non-defendant Hovespian. *See* Slip Op. at 42. (noting that "the bulk of [the Company's misleading statements regarding the Company's Fourth Quarter 2016 financial results] were in connection with the Company's SEC filings, which were allegedly signed by the Directors."). Contrary to my prior finding, it appears that Plaintiffs has not alleged that the directors other than Waldis had any involvement in making the misleading disclosures. The Complaint alleges that the misleading disclosures were made in  (1) an SEC Form 8-K, dated December 6, 2016, which falsely claimed that the Company had sold a 70% interest in STI to Sequential "in return for a cash payment of $146 million," when the Company would, in fact, receive 100.3 million in the form of $17.3 million cash, plus an $83 million note receivable, Compl. at ¶¶41-42; (2) a December 6, 2016 conference call with investors where the Company's former Chief Financial Officer [a non-defendant] said that the Company's fourth-quarter cloud revenue was "on track to be slightly ahead of [the Company's] initial guidance," *id*. at 66; (3) a February 8, 2017 press release where the Company announced that its fourth-quarter revenue "came in right on target" without mentioning the $9.2 million revenue from the then-undisclosed licensing agreement, *id*. at ¶67; and (4) during a February 8, 2017 investor call where "Synchronoss executives were asked about the revenues generated from the Activation sale, but never mentioned the 'perpetual license agreement,' or the 9.2 million" in revenue, *id*. at ¶68. However, the Complaint does not allege, nor do the documents themselves indicate, that any of the directors, other than Waldis, signed the relevant SEC filings.  Furthermore, the Complaint does not allege that any of the Defendants were participants in, or  made statements during the investor calls, or that they had any involvement in drafting, reviewing, or approving the press release. Accordingly, the Court is persuaded that reconsideration is necessary to correct a clear factual error in the Opinion. *Andreyko v. Sunrise*

*Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) ("The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. The word 'overlooked' is the operative term in the Rule." (internal citations and quotation marks omitted)).  The Court finds that Prior Opinion erroneously attributes the statements in the SEC filings and during the press release and investor calls to all of the Defendants.

Even if it is a minor factual error, the mistake is a material one which would result in manifest injustice if not corrected. *Blystone*, 664 F.3d at 415. A director's duty of disclosure is highly context-dependent.  When a director disseminates information in connection with some kind of stock holder action – such as whether to grant a proxy, to vote yes or no on a particular matter, or to seek appraisal or accept merger consideration – the director has the duty to disclose "fully and fairly all material information within the board's control." *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998).[4]  In contrast, in a situation such as the present one, when a director speaks publicly or directly with shareholders about the corporation's public affairs, such as in a press release or other publicly published document, the director owes the shareholders a duty not to speak falsely.  *Id.* at 11.  Thus, in order to allege that Defendants face a substantial risk of liability for breach of the duty of disclosure in this context, Plaintiff must plead particularized facts indicating that the omissions regarding the financial impact of the licensing agreement constitute "the knowing dissemination of false information." *Id.*  Absent the allegation that the Directors signed the relevant SEC filings or were otherwise involved in issuing the misleading disclosures, they cannot be found to have engaged in the knowing dissemination of false information.  In this

---

[4]     As the Court noted in its Opinion on the motion to dismiss, the "duty of disclosure is not an independent duty, but derives from the duties of care and loyalty." *Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009).

respect, the deficiencies in Plaintiff's Complaint mirror other cases where Delaware courts have found that plaintiffs failed to adequately allege a breach of the duty of disclosure because the complaint did not contain particularized allegations as to the directors' involvement in issuing the misleading statements. *See In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009); *Steinberg v. Bearden*, 2018 WL 2434558 (Del. Ch. May 30, 2018).

In *Citigroup*, the Plaintiffs argued that demand was excused because the director-defendants faced a substantial risk of liability for breach of the duty of disclosure because, among other things, the directors failed to "properly disclose the value of certain financial instruments," placing underperforming assets in [structured investments vehicles[ without fully disclosing the risk that [the company] might have to bring the assets back onto its balance sheet, and failing to properly account for guarantees." 964 A.2d at 131–32. The Chancery Court concluded that the complaint's factual allegations were not sufficient to establish a substantial likelihood of liability and proffered three reasons for its conclusion. As an initial matter, the court found that the "plaintiffs fail[ed] to allege with sufficient specificity the actual misstatements or omissions that constituted a violation of the board's duty of disclosure," and instead, the complaint merely alleged in conclusory terms that "the director defendants did not adequately disclose certain risks faced by the Company." *Id*. at 132-33. In that regard, the court noted that in order to satisfy the particularity requirements under Rule 23.1, plaintiffs needed to "allege with particularity which disclosures were misleading, when the Company was obligated to make disclosures, what specifically the Company was obligated to disclose, and how the Company failed to do so," because absent such precise allegations "it is impossible to determine if the directors made the misstatements or omissions knowingly or in bad faith." *Id*. at 134. Second, the court found that Plaintiffs had not "alleg[ed] facts suggesting that the director defendants prepared the financial statements or that

10

they were directly responsible for the misstatements or omissions." *Id*.  The court noted that the complaint alleged that Citigroup's "financial statements contained false statements and material omissions and that the director defendants reviewed the financial statements pursuant to their responsibilities," but concluded that those allegations were insufficient to establish that the directors faced a substantial likelihood of liability. *Id*. Finally, the court found that the plaintiffs had "not alleged particular facts showing that the director defendants were even aware of any misstatements or omissions," and had merely alleged that they should have been aware based on their financial expertise and their positions in the company.  *Id*. at 135.  Accordingly, the Chancery Court dismissed Plaintiffs' breach of the duty of disclosure claims for failure to make demand on the board.

In *Steinberg*, the Chancery Court similarly concluded that board members who had approved statements for inclusion in an SEC filing did not face liability for breach of the duty of disclosure.  2018 WL 2434558 at *10.  There, the plaintiff alleged that three members of the company's board of directors, who were also members of the company's audit committee, faced a substantial threat of personal liability for breach of the duty of disclosure stemming from a misleading statement made in one of the company's SEC form 10-Q filings.  *Id*.  The court rejected the plaintiff's argument that all of the director-defendants on the audit committee faced a substantial risk of liability for breach of the duty of disclosure because the audit committee had approved the financial statements for inclusion in the SEC filing.  *Id*.  In that regard, the court remarked that "merely pleading that the Audit Committee 'caused or allowed' the Company to issue certain statements is not sufficient[ly] particularized pleading to excuse demand under Rule 23.1."  *Id*. (quoting *Citigroup*, 964 A.2d at 133 n.88).  Additionally, the Chancery Court found that

plaintiffs did not allege facts which would demonstrate that the members of the audit committee knew the financial statements were false, and thus had not adequately alleged scienter.  *Id*.

Thus, in both *Citigroup* and *Steinberg*, the Chancery Court recognized that in order to adequately allege that a director faces a substantial risk of liability for breach of the duty of disclosure, a plaintiff must allege specific facts from which a court can infer that the director knowingly or in bad faith allowed the false statements or material omissions to be issued.  *See Citigroup*, 964 A.2d at 135 (finding that plaintiffs' complaint "does not sufficiently allege that the director defendants had knowledge that any disclosures or omissions were false or misleading or that the director defendants acted in bad faith in not adequately informing themselves"); *Steinberg*, 2018 WL 2434558, at *11 (finding that plaintiffs had not alleged facts suggesting that directors "had reason to know that [allegedly deceptive] statements were false so as to support a reasonable inference that they intentionally disregarded their fiduciary duties or otherwise acted in bad faith.").  Here, Plaintiff's Complaint does not satisfy that standard.

Only one member of the Board – Waldis – is clearly alleged to have personally made a false or misleading public statement.  *See in re InfoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007) (finding that plaintiff had adequately alleged particularized facts suggesting that director-defendants faced a substantial risk of personal liability for breach of the duty of disclosure where directors signed the SEC filings which contained misleading disclosures). Plaintiffs seek to hold the remaining Board members responsible for the allegedly misleading public statements by arguing that the Board was heavily involved in the Activation Divestiture such that it is plausible to infer that they must have been involved in issuing the public statements regarding the transaction.  Plaintiffs arguments are unavailing. That type of conclusory allegation is insufficient to  satisfy the requirements of Federal Rule of Civil Procedure 23.1; a plaintiff must offer specific

facts demonstrating the various directors' involvement.  While Plaintiff's Complaint coupled with the Company's SEC filings  clearly indicate that the Board was aware of the details of the Activation Divestiture, as well as the Company's financial status, these allegations are insufficient to demonstrate that at least four of the directors face a substantial risk of liability for permitting the Company to issue misleading disclosures.   For example, the incorporated documents indicate that all of the directors were present at the special meeting of the Board of Directors on November 30, 2016, where the board adopted the resolution approving, *inter alia*, the cloud Analytics License Agreement, and thus, the members should have been aware of the financial considerations underlying the transaction. *See* Declaration of Michael Blanchard in support of Defendants' Motion to Dismiss, ECF No. 49-2, Exhibit K, Minutes of A Special Meeting of the Board of Directors dated November 30, 2016. at page 3**.** Moreover, the members of the Audit Committee – Moore, Cadogan, and Hopkins --  were  purportedly responsible for "assist[ing] the Board in its general oversight of the Company's accounting and financial reporting processes and audits of the Company's financial statements."  *See* Blanchard Declaration, Ex. P, Synchronoss SEC Schedule 14A, dated April 6, 2017 ("2017 Proxy") at page 52 (describing the Audit Committees' responsibilities). However, from these allegations, the Court cannot infer anything more than Directors' awareness of the financial underpinnings of the transaction; these allegations do not provide the Court with a basis to infer that they must also have been involved in issuing the disclosures. Critically, Plaintiff has failed to allege that the three members of the Audit committee had any involvement – or even awareness – of the misinformation disseminated on the investor calls, the press release, or the SEC filings. Notably, although the 2017 Proxy indicates that "the Audit Committee [had] reviewed and discussed with the Company's management the audited financial statements of the Company included in the Company's Annual Report on Form 10-K for

the fiscal year ended December 31, 2016," Plaintiff has not pointed to anything in the record which indicates that the Directors would have had similar responsibility in regard to the SEC Form 8K issued on December 6, 2016, such that this Court can infer that Moore, Cadogan, and Hopkins were responsible for reviewing that particular SEC filing and thus attribute that misleading disclosure to them. *See* Blanchard Declaration, Ex. P, 2017 Proxy at 52. Similarly, in regards to the investor calls, other than alleging that the Company's former Chief Financial Officer was on the call, Plaintiff has not identified which of the Companies directors or officers were present or participated in the call conversation or proffered any basis for inferring that Defendants would have been on those calls. Because Defendants allegedly had knowledge of the true state of facts, if Plaintiff could allege that they had some degree of involvement in issuing, drafting, or approving the SEC filings and press release or that they participated in the investor calls, Plaintiff could theoretically allege a breach of the duty of disclosure.

Because this Court's prior ruling hinged on a factual error which was material to the finding that Plaintiff had adequately alleged a breach of the duty of disclosure, Defendants' motion for reconsideration is granted. Plaintiff's claim that all of the Directors face a substantial risk of liability stemming from their failure to disclose material information regarding the sale of the Activation business, including the financial considerations underlying the sale and the impact of the perpetual licensing agreement on the Company's Fourth Quarter financial results fails because Plaintiff had not pled particularized facts indicating that the directors knew or should have known of the misleading disclosures.[5] Accordingly, Plaintiff has not shown that demand was excused on

---

[5]     Plaintiff has clearly alleged facts demonstrating that Waldis faces a substantial risk of liability for breach of the duty of disclosure based on the fact that he signed the December 2016 SEC Form 8K which contained the misleading disclosures regarding the sale price for the Activation Divestiture, and therefore demand would have been futile with regard to Waldis. However, in order to survive a motion to dismiss based on failure to allege demand futility, "a

that basis, and Plaintiff's Complaint must be dismissed. Because granting this motion for reconsideration now results in the dismissal of the only remaining claim in Plaintiff's Complaint, Plaintiff is granted leave to file an amended complaint within thirty days.[6]

### C. CONCLUSION

For the reasons set forth above, Defendants' Motion for Reconsideration is **GRANTED**. Furthermore, Plaintiff's Complaint is dismissed for failure to adequately allege facts showing that demand was excused. Plaintiff has not alleged facts sufficient to show that the Directors faced a substantial risk of liability for breach of fiduciary duty and could not have acted in a disinterested and independent fashion in the face of demand, such that demand was excused. Plaintiff may file an Amended Complaint within thirty (30) days of the Order accompanying this Opinion.

Date: June 12, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

stockholder must show that a 'majority' of the directors could not impartially consider a demand." *Beneville v. York*, 769 A.2d 80, 82 (Del. Ch. 2000). Here, the Synchronoss Board consists of five members, thus Plaintiff is required to allege sufficient facts demonstrating that demand would have been excused as to at least three members of the Board. Because Plaintiff has only demonstrated that demand would have been excused with regard to Waldis and not any of the other defendants, Plaintiff's Complaint must be dismissed for failure to plead demand futility pursuant to Federal Rule of Procedure 23.1.

[6]     On their initial motion to dismiss, Defendants argued that because Plaintiff had the benefit of making a pre-suit demand for the inspection of Synchronoss's books and records pursuant to 8 Del. C. § 220, amendment would be futile and dismissal should be granted with prejudice. Def MTD Br. at 48; Def. Reply Br. at 25. While Plaintiffs have not sufficiently demonstrated the futility of making a demand on the Synchronoss Board prior to filing suit, as required by Federal Rule of Civil Procedure 23.1, it does not appear that it would be impossible for them to do so. Thus, consistent with Federal Rule of Procedure 15's directive that "court[s] should freely give leave when justice so requires," I find that dismissal without prejudice is appropriate in this case, and Plaintiff should be permitted to file an amended complaint with more particularized facts, to the extent it is possible to do so. Fed. R. Civ. P. 15(a)(2); *see also In Re Gopro, Inc. Stockholder Derivative Litigation*, No.2018-0784, 2020 WL 2036602, at *15 (Del. Ch. Apr. 28, 2020) (dismissing plaintiff's complaint without prejudice where plaintiff had access to §220 documents but nonetheless failed to adequately allege demand futility).